UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

AUDRONE BATAVITCHENE,
        Plaintiff,

        v.                      CIVIL ACTION NO.  13-10729-GAO

JOSEPH O'MALLEY, ET AL.,
        Defendants.

MEMORANDUM AND ORDER

O'TOOLE, D.J.

BACKGROUND

On March 29, 2013, Plaintiff Audrone Batavitchene ("Batavitchene"), a resident of Vilnius, Lithuania,[1] filed a self-prepared Complaint against: (1) Joseph O.Malley ("O'Malley"), a Special Agent of the Immigration and Customs Enforcement/Department of Homeland Security; (2) Michael Ward ("Ward"), a Detective from the Quincy Police Department ("QPD"); (3) William Monteith ("Monteith"), a Detective from the QPD; (4) Kristen Bowes ("Bowes"), a Police Officer from the QPD; (5) Richard F. Potter ("Potter"), a Police Officer from the QPD; (6) Diane E. Moriarty, a judge of the Quincy District Court ("Judge Moriarty"); (7) Jeffrey B. Rubin, Esq. ("Attorney Rubin"), Plaintiff's former defense attorney; and (8) Christina Ramirez ("Ramirez"), a Notary Public.  Batavitchene asserted in her cover sheet attached to the Complaint that the instant action was related to another case in this Court, Batavitchene v. City of Quincy Police Department, Civil Action No. 09-11361-EFH.

In that action, Batavitchene alleged that in June, 2006, the City of Quincy employees demanded a bribe of $102,000.00 in connection with a zoning decision granting her a building permit to build a four-car garage with two stories above.  She further claimed that on December

---

[1]Upon information and belief, Batavitchene was removed from the United States pursuant to a final order of removal.

7, 2007, Quincy Police Officers went to her house without any incident and without a warrant, beat her, pepper sprayed her, took $48,000.00, and demanded she pay the rest of the money. Thereafter in August, 2008, the Quincy Police went to Batavitchene's property again without incident and without a warrant, pressed a gun to her body, beat her, and again demanded the rest of the $54,000.00 she previously refused to give them.

On February 10, 2010, Senior Judge Harrington dismissed that action for failure of Batavitchene to pay the filing fee for civil actions or to seek a waiver thereof by filing a Motion for Leave to Proceed *in forma pauperis*, as directed. The Order indicated that Batavitchene could file a renewed civil action provided that it was timely filed and provided she satisfy the filing fee requirements of this Court.

In this action, Batavitchene contends that jurisdiction is based on diversity pursuant to 28 U.S.C. § 1332; however, her claims primarily are based on constitutional violations.[2] She claims that in December, 2007, O'Malley contacted Ward requesting assistance with respect to an incident. She states that O'Malley, Ward, and Monteith reported an incident falsely accusing

---

[2]The Court will consider Batavitchene's claims against Judge Moriarty, the QPD employees, and Ramirez are raised pursuant to 42 U.S.C. § 1983. Section 1983 of Title 42 creates a cause of action for persons who are denied a federally protected right by a person acting under color of state law. See, e.g., Baker v. McCollan, 443 U.S. 137 (1979) (constitutional deprivations); Maine v. Thiboutot, 448 U.S. 1 (1980) (statutory deprivations). "Section 1983 'is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred.'" Felton v. Lincoln, 429 F. Supp. 2d 226, 238 (D. Mass. 2006) (quoting Graham v. Connor, 490 U.S. 386, 393-94 (1989)); 42 U.S.C.A. § 1983. "It is well established that 'a litigant complaining of a violation of a constitutional right does not have a direct cause of action under the United States Constitution but [rather] must utilize 42 U.S.C. § 1983.'" Wilson v. Moreau, 440 F. Supp. 2d 81, 92 (D.R.I. 2006) (alteration in original) (quoting Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 925 (9th Cir. 2001)). With respect to O'Malley, a federal agent, the Court will construe the claim as one under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971) (allowing a plaintiff to vindicate certain constitutionally protected rights through a private cause of action for damages against federal officials in their individual capacities). The Court will also consider the assertion of state law claims(s) as discussed herein.

Batavitchene of forgery of documents. Ward went to the Quincy District Court to obtain an arrest warrant, but was unable to do so. Nevertheless, Batavitchene claims that she was arrested that day by Ward, Monteith, Bowes, and others, at the request of O'Malley, and without probable cause or an arrest warrant. She also contends that Ward attempted to shoot her in the forehead. Further, she alleges that Ward, Monteith, and Bowes discharged chemical poison into her small car, beat her, strangled and kicked her until she lost consciousness.

Next, Batavitchene alleges that the Defendants seized documents, money, valuables, and checks, that were located in the car and belonged to her and her son. They failed to make an inventory list, and had her car towed.

Additionally, Batavitchene contends that Ward followed her into the Emergency Room and, while she was lying in bed, he tortured her emotionally and physically, twisting her hands and legs while attempting to put her into a wheelchair. He took her out of the hospital, grabbed her hair and forced her into the car and took her to the police station, all without a warrant.

Further, Batavitchene alleges that Potter made a criminal complaint against her, charging her with 10 offenses. She claims all of the charges were false and the facts concerning her arrest and arrest location were false as well. She alleges that on the basis of the false complaint, she was imprisoned for 4.5 years.[3]

She next claims that she did not receive a fair jury trial. On September 24, 2008, Judge Moriarty held a bail revocation hearing, at which time Batavitchene's bail was revoked. Five

---

[3] From other pleadings filed in this Court, it appears that on September 28, 2008, Batavitchene was convicted of intimidating a witness, assault and battery on a police officer, attempting to commit a crime, and resisting arrest. She was sentenced to 2.5 years in the House of Corrections for intimidating a witness, with credit for 117 days served; 2.5 years for assault and battery on a police officer; 1 year for attempting to commit a crime, to run concurrently with the sentence for assault and battery on a police officer; and 2.5 years for resisting arrest, to run concurrent with the sentence for intimidating a witness.

days later, a further bail hearing was held by Judge Moriarty with Batavitchene's defense counsel, Attorney, J. Rubin, at which time she was released on bail. She claims she made an agreement with Attorney Rubin for his legal services and paid him a flat fee of $15,000.00. She further claims that Attorney Rubin took advantage of her and did not let her participate in the bail hearing, and forged the assignment of bail papers without her consent or knowledge.[4]

Finally, she claims that Ramirez authenticated her signature on the Assignment of Bail paper that Attorney Rubin forged.[4]

Batavitchene seeks monetary damages for false arrest, attempt to kill (by the gun pointed at her forehead), and assault and battery. She seeks $2,000,000.00 for physical and emotional injuries in violation of her constitutional rights. She also seeks monetary damages for the deprivation of property (*i.e.*, the right to manage her three-family home and sell it), for depriving her of her property $20,000.00 in bail money.[5] Additionally, she seeks $700,000.00 in damages for the deprivation of employment while she was incarcerated for 4.5 years as a result of the alleged false arrest. In total, she seeks $6,760,000.00 in damages.

On April 3, 2013, Batavitchene paid the $350.00 filing fee for this action.

---

[4]Batavitchene previously filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 challenging her convictions, but the action was dismissed for failure to exhaust state remedies. See Batavitchene v.Clarke, Civil Action No. 09-11533-JLT. Thereafter, she filed a another habeas petition in which she alleged that documents were forged and her bail money stolen, and that she was innocent of the crimes of which she was convicted, because evidence was forged or fabricated, and there was a conspiracy involving a lawyer and judge to revoke her bail and retain her bail money. That petition also was dismissed for failure to exhaust state remedies. See Batavitchene v.Clarke, Civil Action No. 10-11854-DJC.

[4]It appears from that Ramirez may have been an employee of Attorney Rubin, given the allegations that they both have the same work address.

[5]She seeks $60,000.00 (treble the bail money) from three Defendants, but does not identify which three.

DISCUSSION

I.     Screening Authority

Since Batavitchene has paid the filing fee and is not proceeding *in forma pauperis*, no preliminary screening pursuant to 28 U.S.C. § 1915(e) is authorized.  Nevertheless, this Court has inherent authority to manage its own cases and to review a case to determine, among other things, whether or not it is frivolous.  See Bustos v. Chamberlain, 2009 WL 2782238, *2 (D.S.C. 2009) (noting that the court has inherent authority "to ensure a plaintiff has standing, that subject matter jurisdiction exists, and that a case is not frivolous") citing, *inter alia*, Mallard v. United States District Court for the Southern District of Iowa, 490 U.S. 296, 307-308 (1989); Pillay v. INS, 45 F.3d 14, 16-17 (2d Cir. 1995) (where a § 1915 screening was not applicable because a *pro se* party paid the filing fee, the Court still had inherent authority "wholly aside from any statutory warrant" to act *sua sponte*); and Rolle v. Berkowitz, 2004 WL 287678, *1 (S.D.N.Y. 2004) (*sua sponte* dismissal in fee-paying pro se case is warranted where the claims presented no arguably meritorious issue to consider).  See also Gaffney v. State Farm Fire and Cas. Co., 294 Fed. Appx. 975, 977 (5th Cir. 2008) (unpublished decision stating: "This court has on numerous occasions recognized the inherent authority of a district court to dismiss a complaint on its own motion for failure to state a claim.").

For purposes of preliminary screening, Batavitchene's Complaint is construed liberally because she is proceeding *pro se*.  See Hughes v. Rowe, 449 U.S. 5, 9 (1980); Haines v. Kerner, 404 U.S. 519, 520 (1972);  Instituto de Educacion Universal Corp. v. U.S. Dept. of Education, 209 F.3d 18, 23 (1st Cir. 2000).

II.    Failure to State Claims Upon Which Relief May Be Granted

    A.     Absolute Judicial Immunity Bars Claims Against Judge Moriarty

Batavitchene's claims against Judge Moriarty are not set forth in accordance with the

pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. Presuming, however, that her claim is that Judge Moriarty did not give her a fair criminal trial, and/or that she improperly revoked bail or reinstated bail with unreasonable conditions of release, Batavitchene still fails to state a plausible claim upon which relief may be granted. This is because absolute judicial immunity protects judges from acts performed within the scope of their jurisdiction. Mireles v. Waco, 502 U.S. 9, 11 (1991) (*per curiam*) ("[J]udicial immunity is an immunity from suit, not just from the ultimate assessment of damage."); Pierson v. Ray, 386 U.S. 547, 553-554 (1967) (absolute judicial immunity protects integrity of judicial process); Allard v. Estes, 197 N.E. 884, 886 (1935) (stating that is it "too well settled to require discussion, that every judge, whether of a higher or lower court, is exempt from liability to an action for any judgment or decision rendered in the exercise of jurisdiction vested in him by law.").

The reason for recognizing this form of immunity is that:

> [T]he nature of the adjudicative function requires a judge frequently to disappoint some of the most intense and ungovernable desires that people can have.... [T]his is the principal characteristic that adjudication has in common with legislation and with criminal prosecution, which are the two other areas in which absolute immunity has most generously been provided. If judges were personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits. The resulting timidity would be hard to detect or control, and it would manifestly detract from independent and impartial adjudication.

Gallas v. Supreme Court of Pennsylvania, 211 F.3d 760, 768 (3d Cir. 2000) (quoting Forrester v. White, 484 U.S. 219, 226-27 (1988)).

In this case, although Batavitchene may believe that Judge Moriarty erred in her rulings in connection with the criminal case, there is no reasonable or credible allegation, nor could there be, that the actions or inactions of this Defendant were taken outside the scope of her jurisdiction. Thus, even if Judge Moriarty acted negligently or maliciously, her actions or

inactions would not constitute the type of extra-judicial activity exempting her from entitlement to absolute judicial immunity.

   B. <u>The Favorable Termination Rule Bars Claims Relating to Criminal Proceedings</u>

Batavitchene's claims alleging constitutional violations with respect to the lack of probable cause, the filing of false criminal charges against her, false imprisonment, and her claims of due process violations in connection with her criminal trial and sentencing and deprivation of property, are all barred by the Favorable Termination Rule.

It is well-settled that civil rights claims do not accrue unless the litigant has obtained a "favorable termination" of the underlying conviction, parole, disciplinary action or condition of confinement. <u>See</u> <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994) and its progeny. Under this rule, "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal...or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." <u>Heck</u>, 512 U.S. at 486-87 (footnote omitted).[6] Without such a showing of a favorable termination, a prisoner's cause of action has not yet accrued. <u>Id.</u> at 489.

The <u>Heck</u> rule is applicable even where, as here, Batavitchene is no longer in custody and thus does not have a habeas remedy. <u>See, e.g.</u>, <u>Randell v. Johnson</u>, 227 F.3d 300, 301 (5th Cir.2000) (the "favorable termination" requirement applied to inmates in custody as well as

---

[6]Although <u>Heck</u> involved a civil rights action brought under 42 U.S.C. § 1983, suits brought under <u>Bivens</u> are treated in the same manner. <u>See</u> <u>Pandey v. Freedman</u>, 1995 WL 568490, at *1 (1st Cir. 1995) (unpublished) (citing <u>Stephenson</u> v. <u>Reno</u>, 28 F.3d 26, 27 (5th Cir. 1994); <u>Tavarez v. Reno</u>, 54 F.3d 109, 110 (2d Cir. 1995). <u>See also</u> <u>Abella v. Rubino</u>, 63 F.3d 1063 (11th Cir. 1995) ([C]ourts generally apply § 1983 law to <u>Bivens</u> cases.).

released inmates); see also Queen v. Purser, 109 Fed. App'x 659, *660 (5th Cir.2004).

In Spencer v. Kemna, 523 U.S. 1 (1998), the Court held that a petitioner's § 2254 habeas petition challenging the revocation of his parole was rendered moot by his release from prison, because, unlike a criminal conviction, the revocation of parole did not result in concrete injuries-in-fact sufficient to satisfy the case-or-controversy requirement of Article III.  See id. at 14-18. Four Justices concurred that the habeas case was mooted by the release, but they expressed their opinion that "[t]he better view, then, is that a former prisoner, no longer 'in custody,' may bring a § 1983 action establishing the unconstitutionality of a conviction or confinement without being bound to satisfy a favorable-termination requirement that it would be impossible as a matter of law for him to satisfy."  Id. at 20 (Souter, O'Connor, Ginsburg & Breyer, J.J., concurring). Justice Stevens dissented, expressing the opinion that the case was not moot, and that, "[g]iven the Court's holding that petitioner does not have a remedy under the habeas statute, it is perfectly clear, as Justice SOUTER explains, that he may bring an action under 42 U.S.C. § 1983."  Id. at 25 (Souter, J., dissenting).  However, in a later decision, the Court noted in a footnote that "[m]embers of the Court have expressed the view that unavailability of habeas for other reasons may also dispense with the Heck requirement.  This case is no occasion to settle the issue." Muhammad v. Close, 540 U.S. 749, 752 n.2 (citations omitted).

Although some circuits, relying on the concurring and dissenting opinions in Spencer, have found that Heck does not apply where habeas relief is not available, see, e.g., Powers v. Hamilton County Public Defender Comm'n, 501 F.3d 592, 603 (6th Cir. 2007) ("We are persuaded by the logic of those sister circuits that have held that Heck's favorable-termination requirement cannot be imposed against § 1983 plaintiffs who lack a habeas option for the vindication of the federal rights."), the United States Court of Appeals for the First Circuit ("First Circuit") has explicitly held that Heck applies even where habeas relief is unavailable.

8

See Figueroa v. Rivera, 147 F.3d 77 (1st Cir. 1998). In Figueroa, the plaintiffs' decedent had died in prison while his § 2254 petition was "languish[ing]" in court. Id. at 79. Because of the petitioner's death, the § 2254 petition was then dismissed as moot. See id. at 79-80. The plaintiffs later brought a § 1983 claim against the those who had allegedly framed and prosecuted the deceased prisoner for the crime for which he was incarcerated at the time of his death. See id. at 80. In upholding the district court's dismissal of the § 1983 action for failure to state a claim upon which relief may be granted, the First Circuit held that Heck barred the § 1983 claim: "Here, the appellants do not allege that an authorized tribunal or executive body overturned or otherwise invalidated Rios's conviction. Consequently, Heck bars the unconstitutional conviction and imprisonment claims." Id. at 80. Acknowledging that the plaintiffs' position that "strict application of Heck works a fundamental unfairness in this case" did "strike[] a responsive chord," the Court nonetheless concluded that no equitable exception to Heck exists. Id. at 80-81.

Significantly, in a footnote, the First Circuit rejected the idea that the concurring and dissenting opinions in Spencer provide an exception to the Heck's favorable-termination requirement:

> We are mindful that dicta from concurring and dissenting opinions in a recently decided case, Spencer v. Kemna, 523 U.S. 1, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998), may cast doubt upon the universality of Heck's "favorable termination" requirement. See id. at ----, 118 S.Ct. at 989 (Souter, J., concurring); id. at ----, 118 S.Ct. at 990 (Ginsburg, J., concurring); id. at ---- n. 8, 118 S.Ct. at 992 n. 8 (Stevens, J., dissenting). The Court, however, has admonished the lower federal courts to follow its directly applicable precedent, even if that precedent appears weakened by pronouncements in its subsequent decisions, and to leave to the Court "the prerogative of overruling its own decisions." Agostini v. Felton, 521 U.S. 203, ----, 117 S.Ct. 1997, 2017, 138 L.Ed.2d 391 (1997); see also Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989). We obey this admonition.

Id. at 81 n.3.

Figueroa is still the law in this Circuit. See Thore v. Howe, 466 F.3d 173, 180 (1st Cir. 2006) ("Notably, Figueroa also held that there are no equitable exceptions to the Heck rule."). There is no indication that Battavitchene has overturned her conviction.

### C. The Statute of Limitations Bars All Claims

As an additional matter, all of Batavitchene's claims are barred by the applicable statute of limitations. The statute of limitations for claims under the Civil Rights Act is three years. Nieves v. McSweeney, 241 F.3d 46, 52-53 (1st Cir. 2001) (§ 1983); Johnson v. Rodriguez, 943 F.2d 104, 107 (1st Cir. 1991) (§ 1981); Govan v. Trustees of Boston Univ., 66 F. Supp. 2d 74, 80 (D. Mass. 1999) (§ 1981, 1985). Cf. Rodriguez-Garcia v. Municipality of Caguas, 354 F.3d 91, 96 (1st Cir. 2004) (§§ 1981, 1983, and 1985 borrow the forum state's statute of limitations for personal injury claims); Mass. Gen. Laws ch. 260, § 2A (three-year statute of limitations for personal injury claims); Owens v. Okure, 488 U.S. 235 (1989).[7]

Accordingly, her claims for false arrest, false imprisonment, denial of due process, assault and battery, denial of property -- which all allegedly took place in 2007 and 2008 -- are

---

[7]"The primary purpose of a statute of limitations is to prevent plaintiffs from sleeping on their rights and to prohibit the prosecution of stale claims." Barrett ex rel. Estate of Barrett v. U.S., 462 F.3d 28, 41 n11 (1st Cir. 2006) quoting Edes v. Verizon Communications, Inc., 417 F.3d 133, 142 (1st Cir. 2005). Under Massachusetts law, a statute of limitations period "begins to run when a plaintiff discovers, or any earlier date when [he] or she should reasonably have discovered, that [he] or she has been harmed or may have been harmed by the defendant's conduct." Epstein v. C.R. Bard, Inc., 460 F.3d 183, 187 (1st Cir. 2006) citing Bowen v. Eli Lilly & Co., 408 Mass. 204 (1990). "A plaintiff is considered to be on "inquiry notice" when the first event occurs that would prompt a reasonable person to inquire into a possible injury at the hands of the defendant." Epstein, 460 F.3d at 187 citing Szymanski v. Boston Mut. Life Ins. Co., 56 Mass. App. Ct. 367 (2002); see Marino v. Gammel, 191 F. Supp. 2d 243, 253 (D. Mass. 2002) (Keeton, J.) ("In this circuit, Bivens and Section 1983 claims accrue at the moment the plaintiff knows, or has reason to know, of the injury that is the basis for the claims.").

untimely.[8]

Similarly, any claims against O'Malley (a federal agent) are barred by the three-year statute of limitations for a Bivens claims. Barrett ex rel. Estate of Barrett, 462 F.3d at 38. Given Batavitchene's allegations and prior litigation history, there is no basis to find that any equitable tolling would exist for any of her claims, and therefore her claims are deemed to be "frivolous" as that term is used in legal parlance.

D.     Claims Against Attorney Rubin

Batavitchene's claims against Attorney Rubin are barred for three reasons. First, "[a] section 1983 violation occurs when an official acting under color of state law acts to deprive an individual of a federally protected right." Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008) (emphasis added). Section 1983 ordinarily does not create a right of action against private parties. The First Circuit employs a three-part test to determine whether a private party can be characterized as a state actor: the state compulsion test, the nexus/joint action test, and the public function test.[9] Estades-Negroni v. CPC Hosp. San Juan Capestrano, 412 F.3d 1,

---

[8]The Court recognizes that a Complaint may be dismissed on statute of limitations grounds "only if 'the pleader's allegations leave no doubt that an asserted claim is time-barred.'" Young v. Lepone, 305 F.3d 1, 8 (1st Cir. 2002) (quoting LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 509 (1st Cir. 1998)). The First Circuit has held that "a complaint which states a claim that appears to have expired under the applicable statute of limitations may be dismissed as frivolous" under the *in forma pauperis* statute. Johnson v. Rodriguez, 943 F.2d 104, 107 (1st Cir. 1991), cert. denied, 112 S. Ct. 948 (1992) (quoting Street v. Vose, 936 F.2d 38, 39 (1st Cir. 1991), cert. denied, 112 S. Ct. 948 (1992)). Similarly, under its inherent authority, this Court may dismiss a claim *sua sponte*, for failure to state a claim upon which relief may be granted.

[9]"Under the state compulsion test a private party is fairly characterized as a state actor when the state 'has exercised coercive power or has provided such significant encouragement, either overt or covert, that the [challenged conduct] must in law be deemed to be that of the State.'" Estades-Negroni, 412 F.3d at 4 (quoting Blum v. Yaretsky, 457 U.S. 991 (1982)). Under the nexus/joint action test, a private party can be characterized as a state actor "where an examination of the totality of the circumstances reveals that the state has 'so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in [the

4-7 (1st Cir. 2005) citing Rockwell v. Cape Cod Hospital, 26 F.3d 254, 257 (1st Cir. 1994) and Perkins v. Londonderry Basketball Club, 196 F.3d 13, 18-21 (1st Cir.1999).

Here, Batavitchene has not alleged any facts from which the Court reasonably may infer that Attorney Rubin was acting "under color of law" in accordance with Estades-Negroni. The mere fact that he has been licensed to practice law by the state is not sufficient to implicate state action. See Runge v. Kelly, 2006 WL 3313847 (D. Mass. 2006) (Stearns, J.) (discussing three part test and concluding that private lawyers do not become state actors merely by being licensed by the State). It is well-settled that a lawyer does not act under the color of state law in performing a lawyer's traditional function as counsel to a party. See Polk County v. Dodson, 454 U.S. 313, 471 (1981); Malachowski v. City of Keene, 787 F.2d 704, 710 (1st Cir. 1986); see generally Dunker v. Bissonnette, 154 F. Supp. 2d 95, 105 (D. Mass. 2001) (Stearns, J.) citing Polk, 454 U.S. at 325, Harris v. Champion, 51 F.3d 901, 909-10 (10th Cir. 1995). Although Plaintiff may take issue with his conduct while representing her during her criminal proceedings, there can be no reasonable basis to infer that Attorney Rubin was not performing the traditional functions of a lawyer and not pursuant to any governmental relationship. Thus, Plaintiff can not meet the requirements to set forth a § 1983 claim.

Second, even if a § 1983 claim existed against Attorney Rubin, it would be barred by the statute of limitations, as discussed above, because the alleged wrongdoing took place more than three years ago.

---

challenged activity].'" Id. at 5 (quoting Bass v. Parkwood Hospital, 180 F.3d 234, 242 (5th Cir. 1999)). Finally, under the public function test, a private party can be characterized as a state actor "if the plaintiff establishes that, in engaging in the challenged conduct, the private party performed a public function that has been 'traditionally the exclusive prerogative of the State.'" Id. (quoting Blum, 457 U.S. at 1005). "The First Circuit has suggested that it would require a contractual relationship to justify a finding of state action." Mandeville v. Merrimack County Dept. of Corrections, 2006 WL 3313847, *2 (D.N.H. 2006) citing Estades-Negroni, 412 F.3d at 7.

Third, Batavitchene's claims could, under a broad reading, be construed as asserting a state law claim for legal malpractice against Attorney Rubin. Nevertheless, that state law claim also is barred by the statute of limitations (three years for negligence claims).

## CONCLUSION

Based on the foregoing, it is hereby Ordered that this action is DISMISSED *sua sponte* in its entirety.

SO ORDERED.

/s/ George A. O'Toole, Jr.
GEORGE A. O'TOOLE, JR.
UNITED STATES DISTRICT JUDGE

DATED: April 16, 2013